# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **MIKI MCARTHER & MATT GUEMPEL,** individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Case No.: _____ |
| **v.** | **JURY TRIAL DEMANDED** |
| **RED TOOLBOX USA INC.,** | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiffs Miki Mcarther & Matt Guempel individually and on behalf of all others similarly situated ("Plaintiffs") bring this Class Action Complaint against Defendant, Red Toolbox USA Inc., ("Defendant"), and allege, upon personal knowledge as to Plaintiffs' own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.    Plaintiffs bring this class action lawsuit on behalf of themselves, and all others similarly situated who purchased the Long Handle Hoe and Rake Stanley Jr. Kids Wheelbarrow and 7-piece Garden Sets with **the model number 1662178** and a **manufacturing date of 12.2023** (the Products).

2.    Unfortunately, the Products are unfit for their intended use because they contain levels of lead that exceed the federal lead paint ban.

3.  The Products are formulated, designed, manufactured, advertised, sold, and distributed by Defendant or its agents to consumers, including Plaintiffs, across the United States.

4.  Defendant's marketing and advertising specifically targets children.

5.  Lead-based paint and lead-contaminated dust can cause lead exposure for young children. They are considered some of the most widespread and hazardous sources for lead exposure for children in the United States. [1]

6.  Each of the products were manufactured by Defendant, distributed to other corporations, and then sold to consumers across the United States.

7.  Through marketing and sales, Defendant represented that the Products are safe and effective for children to use.

8.  Other manufacturers formulate, produce, and sell non-poisonous toys, which is evidence that this poisoning risk inherent with Defendant's Products is demonstrably avoidable.

9.  Feasible alternative formulations, designs, and materials are currently available and were available to Defendant at the time the Products were formulated, designed, and manufactured.

10. At the time of their purchases, Defendant didn't notify Plaintiffs, and similarly situated consumers, of the Products; risk of lead poisoning through the product labels, instructions, ingredients list, other packaging, advertising, or in any other manner, in violation of state and federal law.

11. Plaintiffs purchased the Products, while lacking the knowledge that the Products could poison those who used them, thus causing serious harm to those who use such Products.

---

[1] https://www.cdc.gov/lead-prevention/prevention/paint.html#:~:text=Lead%2Dbased%20paints%20were%20banned,lead%20paint%20chips%20and%20dust. (last accessed on September 19, 2024)

12.    Because Plaintiffs were injured by the Products and all consumers purchased the worthless and dangerous Products, which they purchased under the presumption that the Products were safe, they have suffered losses.

13.    As a result of the above losses, Plaintiffs seek damages and equitable remedies.

## PARTIES

14.    Plaintiff Miki Mcarther is a resident and citizen of Williamston, South Carolina.

15.    Plaintiff Matt Guempel is a resident and citizen of Wellford, South Carolina.

16.    Plaintiffs purchased the Stanley Jr. Kids Wheelbarrow and 7-piece Garden Sets.

17.    Defendant is a Delaware based corporation with its principal place of business in 318 Helms Ct, Florham Park, New Jersey and it specializes in the manufacture and marketing of children's toys in the United States & Canada.

18.    Defendant is the home for brands like STANLEY Jr., Black+Decker, Tasty Junior, Oklahoma Joe's and Char-Broil. [2]

19.    Upon information and belief, the planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the Products, and the claims alleged herein were primarily carried out at Defendant's headquarters and facilities within Florham Park, New Jersey.

## JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. §1332(d), as modified by the Class Action Fairness Act of 2005, because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00,

---

[2] https://red-toolbox.com/about/ (last accessed on September 19, 2024)

exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiffs and Defendant are citizens of different states.

21.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

22.    This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself to the laws, rights, and benefits of the State of New Jersey. Defendant is incorporated in New Jersey and engaged in activities including (i) directly and/or through its parent companies, affiliates and/or agents providing services throughout this forum (ii) conducting substantial business in this forum; and/or (iii) engaging in other persistent courses of conduct and/or deriving substantial revenue from services provided in New Jersey and in this judicial District.

23.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a)(1) because substantial parts of the events giving rise to this action occurred in this District. Moreover, Defendant is based in this District.

## **FACTUAL ALLEGATIONS**

24.    Some toys, especially those that are imported or are antique toys, and toy jewelry may contain lead.[3]

25.    Toys made in some countries are more likely to contain lead than toys made in the United States, Canada, or the European Union. Lead paint was banned for use in house paint, on products marketed to children, and on dishes or cookware in the United States in 1978. However, it is still widely used in many other countries.[4]

---

[3] https://www.cdc.gov/lead-prevention/prevention/consumer-products.html#:~:text=Imported%20toys&text=Lead%20paint%20was%20banned%20for,used%20in%20%20many%20other%20countries. (last accessed on September 19, 2024)
[4] *Id.*

26.     The use of lead in plastics has not been banned. Lead is used to soften plastic and to make it more flexible so that it can go back to its original shape. It may also be used in plastic toys to stabilize molecules from heat. The chemical bond between the lead and plastics breaks down and forms a dust when the plastic is exposed to sunlight, air, or detergents. A young child may touch the plastic toy and then ingest the dust when putting their fingers in their mouth.[5]

27.     Toys sold in the US are regulated by the Consumer Product Safety Commission (CPSC), which enforces federal standards for children's products. General laws regulating all products concern sharp points or edges, parts small enough for a child to swallow, and lead in paint, according to Consumer Reports. [6]

28.     Though there is no comprehensive US ban on lead in toys, it is illegal for the paint to contain more than 0.06 percent concentration lead, and with good reason. When ingested, lead can cause nerve damage, learning and behavioral problems, reproductive damage, and irreversible brain damage. It can also increase the risk of cancer.[7]

29.     Defendant is a well-established corporation known for the manufacture and marketing of kid's toys sold in the United States & Canada.

### The Products

30.     The Products at hand are toys made for children that resemble a Garden Set.

31.     The products subject to the recall are the Long Handle Hoe and Rake Stanley Jr. Kids Wheelbarrow and 7-piece Garden Sets with the model number 1662178 and a manufacturing date of 12.2023. [8]

---

[5] *Id.*
[6] https://greenamerica.org/green-living/beyond-lead-toxins-toys (last accessed on September 19, 2024)
[7] *Id.*
[8] https://www.recall-rtb.com/ (last accessed on September 19, 2024)

32.    Unfortunately, the Products have a risk of poisoning due to the products containing levels of lead that exceed the federal lead paint ban.[9]

33.    In more detail, these Products are a garden toy set, as seen below:



34.    On September 12, 2024, the Consumer Product Safety Commission (CPSC) announced that Red Toolbox USA had recalled about 459,200 units of the Stanley Jr. Kids

---

[9] https://www.cpsc.gov/Recalls/2024/Red-Toolbox-Recalls-Stanley-Branded-Jr-Kids-Garden-Sets-Due-to-Lead-Poisoning-Hazard-Violation-of-Federal-Ban-for-Lead-in-Paint-Sold-Exclusively-by-Costco-Wholesale (last accessed on September 19, 2024).

Wheelbarrow and 7-piece Garden Sets because the painted long hoe and rake contain levels of lead that exceed the federal lead paint ban, posing a lead poisoning hazard to children.[10]

**Defendant's Misrepresentations and Omissions are Actionable**

35. Plaintiffs bargained for a garden toys set that was safe for their children to use. Defendant's Products were, and still are, unsafe due to the risk of poisoning because of the level of lead that can be found in them.

36. Nowhere on the webpage or the Products' packaging did Defendant disclose that the products could poison the user due to the high levels of lead that can be found on them.

37. No reasonable consumer would expect the Products they purchased, in this case a children's garden toy set, to contain high levels of lead. Accordingly, Plaintiffs and Class Members were injured as a result of purchasing the Products, including, among other things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by Defendant; and they were deprived of the benefit of their bargain; and they spent money on a product that did not have any value or had less value than warranted or that they would not have purchased and consumed had they known the truth about the products.

38. Additionally, because the facts concern a safety-related deficiency in the Product, Defendant was under a continuous duty to disclose to Plaintiffs and the members of the Classes the true nature of the Product and to disclose the Product contained a substance known to cause poisoning. Furthermore, Defendant, as the owner, manufacturer, marketer, and seller, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the composition of the Product.

---

[10] https://www.abc27.com/news/consumer/childrens-gardening-toys-recalled-for-lead-poisoning-hazard/ (last accessed on September 19, 2024)

39.    Plaintiffs seeks to recover damages because the Products are adulterated, worthless, and unfit for safe human use due to the lead contained within the Products.

40.    Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the risk of poisoning affecting the Products.

## PLAINTIFFS' FACTUAL ALLEGATIONS

41.    Plaintiff Miki Mcarther bought the Stanley Jr. Kids Wheelbarrow and 7-piece Garden Sets for personal household use, near his residence in Williamston, South Carolina.

42.    Plaintiff Matt Guempel bought the Stanley Jr. Kids Wheelbarrow and 7-piece Garden Sets for personal household use, near his residence in Wellford, South Carolina.

43.    Nowhere on the Product's packaging or webpage did Defendant disclose that the Products could present a risk of poisoning due to the high levels of lead in the toys.

44.    If Plaintiffs had been aware of the risk of lead poisoning in the Products, they would not have purchased the Products or would have paid significantly less.

45.    As a result of Defendant's actions, Plaintiffs have incurred damages.

46.    If the Products and packaging were reformulated to be safe and avoid risk of lead poisoning, Plaintiffs would consider purchasing the Products again in the future.

## CLASS ACTION ALLEGATIONS

47.    Plaintiffs brings this case as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and or 23(c)(4), individually, and as the Class representatives on behalf of the following:

**Nationwide Class:** All persons within the United States who purchased the Long Handle Hoe and Rake Stanley Jr. Kids Wheelbarrow and 7-piece Garden Sets with the model number 1662178 and a manufacturing date of 12.2023.

**New Jersey Subclass:** All persons within New Jersey who purchased the Long Handle Hoe and Rake Stanley Jr. Kids Wheelbarrow and 7-piece Garden Sets with the model number 1662178 and a manufacturing date of 12.2023.

**South Carolina Subclass:** All persons within South Carolina who purchased the Long Handle Hoe and Rake Stanley Jr. Kids Wheelbarrow and 7-piece Garden Sets with the model number 1662178 and a manufacturing date of 12.2023.

48.    The Nationwide Class, New Jersey Class, and South Carolina Subclass shall collectively be referred to herein as the "Classes."

49.    Plaintiffs reserve the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

50.    Excluded from the Classes are governmental entities, Defendant, its officers, directors, affiliates, legal representatives, and employees.

51.    This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

52.    **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). The Classes numbers at least in the thousands of persons. As a result, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

53.    **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to

the Classes that predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

    a.  whether Defendant's advertising, merchandising, and promotional materials directed to Plaintiffs were deceptive regarding the risks posed by Defendant's Products;

    b.  whether Defendant made representations regarding the safety of the Products;

    c.  whether Defendant omitted material information regarding the safety of the Products;

    d.  whether Defendant's Products were merchantable;

    e.  whether Defendant violated the consumer protection statutes invoked herein;

    f.  whether Defendant's conduct alleged herein was fraudulent; and

    g.  whether Defendant was unjustly enriched by sales of the Products.

54.    The questions set forth above predominate over any questions affecting only individual persons concerning sales of Defendant's Products throughout the United States and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to the other available methods for the fair and efficient adjudication of Plaintiffs' claims.

55.    **Typicality** – Federal Rule of Civil Procedure 23(a)(3). Plaintiffs' claims are typical of those of the Classes in that the Class members uniformly purchased Defendant's Products and

were subjected to Defendant's uniform merchandising materials and representations at the time of purchase.

56. **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class members to protect their interests. In addition, it would be impracticable and undesirable for each member of the Classes who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

57. **Adequacy** – Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives of the Classes because they are Members of the Class, and their interests do not conflict with the interests of the Classes that they seek to represent. The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and undersigned counsel.

58. **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed.

R. Civ. P. 23(b)(1). Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

59.    **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class Members as described below, with respect to the members of the Classes as a whole. In particular, Plaintiffs seek to certify Classes to enjoin Defendant from selling or otherwise distributing the Products as labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised benefits and are otherwise safe to use as intended

60.    Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

    a.  The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendant;

    b.  The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## CAUSES OF ACTION

### COUNT I

**Unjust Enrichment**
**(On behalf of the Nationwide Class and, alternatively, the Subclasses)**

61.    Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

62.    Plaintiffs, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's defective and worthless Products. These monies were no gifts or donations but were given in exchange for the Products.

63.    Defendant voluntarily accepted and retained these monetary benefits mentioned above.

64.    Because this benefit was obtained unlawfully, namely by selling and accepting compensation for Products unfit for human consumption, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

65.    Defendant received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiffs, and the other members of the Classes, because Plaintiffs, and members of the Classes, purchased mislabeled products that were not what Plaintiffs and the Classes bargained for and were not safe and effective, as claimed.

66.    Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiffs and the other members of the Classes. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiffs, and members of the Classes, because they would have not purchased the Products had they known the true facts.

67.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Nationwide Class for its unjust enrichment, as ordered by the Court.

## COUNT II

**Breach of Express Warranty**
**On behalf of the Nationwide Class and, alternatively, the Subclasses)**

68.    Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

69.    Plaintiffs, and each member of the Classes, formed a contract with Defendant at the time they purchased the Products.

70.    The terms of the contract include the promises and affirmations of fact, that the products were safe to use, made by Defendant on the Products' packaging and through marketing and advertising.

71.    This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the Classes and Defendant.

72.    As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Products are safe to use, particularly for children.

73.    Plaintiffs and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

74.    Defendant breached express warranties relating to the Products and their qualities because Defendant's Products possessed the capability to poison the consumers due to high levels of lead in them at the time of purchase and they do not conform to Defendant's affirmations and promises described above.

75.    Plaintiffs and each of the members of the Classes would not have purchased the Products had they known the true nature of the risk of the Product poisoning those who used the Products.

76.    As a result of Defendant's breach of warranty, Plaintiffs and each Class Member suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT III

**Breach of Implied Warranty**
**On behalf of the Nationwide Class and, alternatively, the Subclasses)**

77.    Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

78.    Defendant is engaged in the business of designing, manufacturing, constructing, making, selling, distributing, labeling, advertising, retailing, and/or otherwise placing the Product into the stream of commerce.

79.    The Products are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Products, as goods, were purchased.

80.    The implied warranty of merchantability included with the sale of each Product means that Defendant guaranteed that the Products would be fit for the ordinary purposes for which Garden Toy Sets are used and sold and were not otherwise injurious to consumers. The

implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant, Plaintiffs and the Class Members.

81.    Defendant breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of providing a reasonably safe for use Garden Toy Set, particularly for children, because the Products have a risk of poisoning the consumer due to the high levels of lead in the Products. Therefore, the Products are not fit for their particular purpose.

82.    Defendant's warranty expressly applies to the purchaser of the Products, creating privity between Defendant, Plaintiffs and Class Members.

83.    However, privity is not required because Plaintiffs and Class Members are the intended beneficiaries of Defendant's warranties and its sale through retailers. Defendant's retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiffs and Class Members.

84.    Defendant has been provided sufficient notice of its breaches of implied warranties associated with the Products. Defendant was put on constructive notice of its breach through its review of consumer complaints and other reports.

85.    Had Plaintiffs, Class Members, and the consuming public known that the Products could poison them and cause harm, they would not have purchased the Products or would have paid less for them.

86.    As a direct and proximate result of the foregoing, Plaintiffs and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT IV

**Breach of Implied Warranty of Merchantability**
**On behalf of the Nationwide Class and, alternatively, the Subclasses)**

87.     Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

88.     Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Classes.

89.     There was a sale of goods from Defendant to Plaintiffs and the Classes.

90.     As the developer, manufacturer, marketer, distributor, and/or seller of the defective Products, Defendant impliedly warranted to Plaintiffs and the Classes that its Products were fit for their intended purpose in that they would be safe for Plaintiffa and the Classes to use. Contrary to these representations and warranties, the Products were not fit for their ordinary consumption, and did not conform to Defendant's affirmations of fact and promises included with the packaging.

91.     Defendant breached the implied warranty in the contract for the sale of the Products by knowingly selling to Plaintiffs and the Classes a product that Defendant knew would expose Plaintiffs and the Classes to health risks, thus meaning Defendant knew that the Products were not fit for their intended use as safe to use Garden Toy Set.

92.     Defendant was on notice of this breach, as they were made aware of the adverse health effects caused by risk of lead poisoning that can result from the use of their Products.

93.     Plaintiffs and the Classes did not receive the goods as bargained for because the goods they received were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

94.     Plaintiffs and members of the Classes are the intended beneficiaries of Defendant's implied warranties.

95.    The Products were not altered by Plaintiffs or the members of the Classes.

96.    Plaintiffs and members of the Classes used the Products in the ordinary manner in which such Garden Toy Sets were intended to be used.

97.    The Products were defective when they left the exclusive control of Defendant.

98.    The Products were defectively designed and/or manufactured and unfit for their intended purpose as safe to use Garden Toy Sets, and Plaintiffs and members of the Classes did not receive the goods that they bargained for.

99.    Plaintiffs and members of the Classes purchased the Products that contained the Defect, which was undiscoverable by them at the time of purchase and at any time during the class period.

100.    As a result of the defect in the Products, Plaintiffs and members of the Classes have suffered damages including, but not limited to, the cost of the defective product, loss of use of the product and other related damage.

101.    Defendant breached the implied warranty of merchantability to the Plaintiffs and Class members.

102.    Thus, Defendant's attempt to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void.

103.    Plaintiffs and Class members have been damaged by Defendant's breach of the implied warranties.

104.    Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relied, as well as costs and attorneys' fees, available under law.

## COUNT V

**Fraudulent Concealment**
**(On behalf of the Nationwide Class and, alternatively, the Subclasses)**

105.  Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

106.  Defendant aimed to portray the Product as safe for frequent and repeated use and omitted key facts concerning the potential harm from prolonged exposition to high levels of lead, a component found in the Product.

107.  Defendant, acting through its representatives or agents, delivered the Product to its distributors and through other channels to consumers, including the Plaintiffs and Class Members.

108.  Defendant, as the owner, manufacturer, marketer, and seller of the Products, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the composition of the Product. Defendant owed Plaintiffs and Class Members a duty to disclose because the risks associated with lead containing products were known and/or accessible exclusively to Defendant, who had superior knowledge of the facts; because the facts would be material to consumers; because the Defendant actively concealed or understated them; because the Defendant intended for consumers to rely on the omissions in question; and because Defendant made partial representations concerning the same subject matter as the omitted facts. Furthermore, because the Product poses an unreasonable risk of substantial bodily injury, Defendant was under a continuous duty to disclose that the Products contained high levels of a substance known to have adverse health effects.

109.    Defendant willfully and knowingly omitted material information regarding the quality and safety of the Products as discussed herein.  Defendant countenanced these material omissions to boost or maintain sales of the Product, and to create a false assurance that prolonged loyalty to Defendant's brand—the continued use of the Products—would not place consumers in danger. The omitted information and partial representations were material to consumers because they play a significant role in determining the value of the Products at the time of purchase.

110.    During this time, Plaintiffs, and members of the Classes, were using the Products without knowing the Products could poison the users due to the high levels of lead found in them.

111.    Defendant failed to discharge its duty to disclose these materials facts.

112.    Although Defendant had a duty to ensure the accuracy of the information regarding the Products because such information was within the exclusive knowledge of Defendant and because the information pertains to serious health issues, Defendant failed to satisfy its duty.

113.    Defendant engaged in fraudulent and deceptive conduct by devising and executing a scheme to deceptively convey that their products were safe. Defendant's actions were done to gain a commercial advantage over competitors, and to drive consumers, like the Plaintiffs and Class Members, away from purchasing a competitor's product.

114.    Plaintiffs and the Classes reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective Products manufactured and sold by Defendant had they known they possessed this risk of lead poisoning.

115.    As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiffs, and the Classes, suffered damages in the amount of monies paid for the defective Products.

116. Plaintiffs and the Class Members have suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiffs and the Class Members paid for the Product, awards medical monitoring expenses, costs, interest and attorneys' fees.

## COUNT VI

**Violation of the New Jersey Consumer Fraud Act**
**N.J.S.A. 56:8–2,**
**(On behalf of the Nationwide Class and, alternatively, the Subclasses)**

117. Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

118. New Jersey's Consumer Fraud Act (CFA) establishes that: "the act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice".

119. Defendants engaged in unlawful, fraudulent and unfair business practices.

120. Defendant's misconduct constituted unlawful business acts or practices within the meaning of the CFA.

121. Plaintiffs and Classes suffered actual harm, damages and economic losses and Plaintiff and the Classes will continue to suffer such harm, damages and economic loss in the future.

122. Defendant's misconduct was a substantial factor in causing and proximately caused Plaintiffs' and the Classes actual harm, damages and economic loss in the future.

123.   Defendant's conduct was reckless and a willful disregard of the rights and interest of Plaintiffs and the Classes. Defendant acted intentionally, maliciously and oppressively, with a willful and conscious disregard of the rights of Plaintiffs and the Classes so as to constitute oppression, fraud or malice under the law.

124.   Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes, alleged herein, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

a.   For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives for the Classes and Plaintiffs' attorney as Class Counsel;

b.   For an order declaring the Defendant's conduct violates the causes of action referenced herein;

c.   For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d.   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For an order of restitution and all other forms of equitable monetary relief;

g.   For injunctive relief as pleaded or as the Court may deem proper; and

h.   For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

i.   Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable as of right.

Dated: October 10, 2024

Respectfully submitted,

**SULTZER & LIPARI, PLLC**

By:_/s/ Philip J. Furia_
Philip J. Furia, Esq.
Jason P. Sultzer, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
furiap@thesultzerlawgroup.com
sultzerj@thesultzerlawgroup.com

-AND-

Paul J. Doolittle, Esq. _(Pro Hac Vice Pending)_
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street Charleston, SC 29403
Tel: (803) 222-2222
Email: pauldoolittle@poulinwilley.com
cmad@poulinwilley.com

_Attorneys for Plaintiffs_