UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>MADELINE COX ARLEO<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

June 9, 2025

VIA ECF
All Counsel of Record

**LETTER ORDER**

Re:   **McArther et al v. Red Toolbox USA Inc.**
      **Civil Action No. 24-9723**

Dear Litigants:

Before the Court is Defendant Red Toolbox USA Inc.'s ("Red Toolbox" or "Defendant") motion to dismiss Plaintiff Matt Guempel's ("Plaintiff") class action complaint.[1] See ECF No. 13 (the "Motion"). Plaintiff opposes the Motion. See ECF No. 14 ("Opposition"). For the following reasons, Defendant's Motion is **GRANTED**.

I.   **BACKGROUND**

The premise of this case is simple. Plaintiff Guempel alleges he purchased a children's toy gardening set, and two pieces of the set—the hoe and rake—were later voluntarily recalled for lead contamination above the federal limit. See, e.g., Compl. ¶¶ 1–2, 15, 31 n.8. Because the lead-contaminated items "have a risk of poisoning," Plaintiff alleges they are worthless, or "worth less," depriving Plaintiff of the benefit of his bargain. See, e.g., id. ¶¶ 12, 35, 37, 39, 65, 93, 98.

Defendant Red Toolbox, the gardening set's manufacturer and distributor, offered replacement parts as part of the voluntary recall. See Mot., Ex. 1 ("Recall Notice"). Guempel instead filed suit against Red Toolbox, bringing claims for unjust enrichment, breach of express and implied warranties, fraudulent concealment, and violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2. See generally Compl.

While Defendant raises myriad arguments in its Motion, this Order will address only one of them: whether Plaintiff has plausibly alleged that his garden set was contaminated with lead sufficient to establish Article III standing. Determining that Plaintiff has failed to cross the plausibility threshold, this Court lacks jurisdiction and must dismiss Plaintiff's Complaint.

---

[1] The Complaint, ECF No. 1, has two named plaintiffs: Miki McArther and Matt Guempel. McArther, however, has voluntarily dismissed his claims against Defendant. See ECF No. 6. As such, the Court will only consider those allegations pertaining to Guempel.

## II. STANDARD

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1), as standing is a jurisdictional matter. See Huertas v. Bayer, 120 F.4th 1169, 1174 (3d Cir. 2024). When faced with a facial attack on standing, courts review complaints pursuant to the Rule 12(b)(6) standard, accepting as true "all material allegations set forth in the complaint," and "constru[ing] those facts in favor of the nonmoving party." Id. (quoting In re Schering Plough Corp., Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)). To survive a motion to dismiss, a complaint must contain adequate factual matter to state a claim for relief that is facially plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "While the plausibility standard does not impose a 'probability requirement,' it does demand 'more than a sheer possibility that a defendant has acted unlawfully.'" Huertas, 120 F.4th at 1174 (quoting In re Schering, 678 F.3d at 243).

## III. DISCUSSION

To establish Article III standing, plaintiffs must establish they have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. Id. To properly allege the first prong of that test, plaintiffs must demonstrate they suffered a concrete, particularized, and actual or imminent invasion of a legally protected interest. Id. A "particularized" injury is an injury that "affects [a plaintiff] in a 'personal and individual way.'" Yaw v. Del. River Basin Comm'n, 49 F.4th 302, 314 (3d Cir. 2022) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (3d Cir. 2016)). In a class action proceeding, "the class's standing turns on the named plaintiff['s] standing." Lewis v. Gov't Emps. Ins. Co., 98 F.4th 452, 459 (3d Cir. 2024). Therefore, if Plaintiff is unable to allege that he suffered a particularized injury as representative of the class, his complaint must be dismissed for lack of subject matter jurisdiction.

When pleading injury under the benefit-of-the-bargain theory due to a contaminated product, plaintiffs must not only plausibly allege economic injury, but that the items they purchased were contaminated. Huertas, 120 F.4th at 1175–79. Here, putting aside any argument that Plaintiff's injury-in-fact was remedied by Defendant's replacement offer,[2] Plaintiff has adequately pleaded an economic injury: that the gardening set, which contained lead beyond acceptable levels, was worth less than one containing an acceptable level of contaminant. See Compl. ¶¶ 12, 34. Cf. Huertas, 120 F.4th at 1178 ("[G]iven that contaminated products are unfit for their intended use, they are inherently worth less than the uncontaminated products Plaintiffs thought they were purchasing."). Plaintiff, however, has not plausibly alleged that his gardening set was among the contaminated.

At the motion to dismiss stage, "Plaintiffs need not assert with specificity the extent of the contamination across all products, so long as they provide sufficient details to plausibly allege their products were contaminated." Huertas, 120 F.4th at 1178 (emphasis added). "The mere fact that

---

[2] Because the Court has concluded that Defendant lacks standing for failure to plead his gardening set was contaminated, the Court does not address Defendant's second standing argument: that Plaintiff's only injury was remedied by Defendant's offer to replace the contaminated items. See Mot. at 6–14.

a product was recalled," however, "would not nudge [p]laintiffs claims across the line from conceivable to plausible." Id. (cleaned up).

Besides citing Defendant's voluntary Recall Notice, Plaintiff has not alleged anything else to suggest that the contamination was sufficiently widespread as to plausibly affect his gardening set. See id. at 1179 (citing In re Recalled Abbot Infant Formula Prod. Liab. Litig., 97 F.4th 525, 529–30 (7th Cir. 2024)). With respect to Plaintiff's specific purchase, he alleges the following:

1. "Plaintiff[] bring[s] this class action lawsuit on behalf of [himself], and all others similarly situated who purchased the [gardening set] with the model number 1662178 and a manufacturing date of 12.2023 (the Products)." Compl. ¶ 1.

2. "Unfortunately, the Products are unfit for their intended use because they contain levels of lead that exceed the federal lead paint ban." Id. ¶ 2.

3. "Plaintiff[] purchased the [gardening set]." Id. ¶ 16.

4. "Unfortunately, the Products have a risk of poisoning due to the products containing levels of lead that exceed the federal paint ban." Id. ¶ 32.

5. "On September 12, 2024, the Consumer Product Safety Commission (CPSC) announced that Red Toolbox USA had recalled about 459,200 units of the [gardening sets] because the painted long hoe and rake contain levels of lead that exceed the federal lead paint ban." Id. ¶ 34.

6. "Plaintiff Matt Guempel bought the [gardening set] for personal household use, near his residence in Wellford, South Carolina." Id. ¶ 42.

These allegations may establish, at most, that Plaintiff's gardening set was recalled.[3] But they otherwise fail to raise the plausible inference that Plaintiff's gardening set was among the contaminated. Beyond the conclusory allegation that the "Products . . . contain levels of lead that exceed the federal lead paint ban," Compl. ¶ 2, nothing else in the complaint establishes that "unsafe or unlawful amounts of lead in the [gardening sets]" were so widespread that the contaminant could have been present in any given product. See Mot. at 12; see also Hirsch v. L'Oreal USA, Inc., No. 22-06569, 2025 WL 1540857, at *3 n.6 (N.D. Ill. May 29, 2025) (plaintiff's passing allegation that her shampoo product was contaminated with benzene was too conclusory to support an inference that plaintiff actually purchased a contaminated product).

---

[3] Oddly, Plaintiff does not allege when or what at store he purchased his garden set. While this would have typically raised additional plausibility concerns, the Recall Notice indicates that the recalled gardening sets with the model number 1662178 and a manufacturing date of 12.2023 were sold exclusively at Costco during a specific time range. See Mot., Ex. 1 at 2–3. In other words, because it appears that the gardening sets subject to recall were not sold at any other store during any other time frame, the Court can reasonably infer that Plaintiff purchased his gardening set at Costco during the relevant period, and that his items, which he alleges had the appropriate recall model number and manufacturing date, were subject to the recall.

True, the voluntary Recall Notice indicates—without any elaboration—that "[t]he painted long hoe and rake of the recalled garden[ing] set contain levels of lead that exceed the lead paint ban." Mot., Ex. 1 at 2. But this cursory statement does not amount to a concession from Defendant that every single product was contaminated. When the Third Circuit ruled in Huertas v. Bayer that the "fact that a product was recalled would not nudge [p]laintiffs' claims across the line from conceivable to plausible," it did not hinge that holding on particularized language in the recall notice.[4] 120 F.4th at 1178 (cleaned up).

Of course, if the Recall Notice clearly indicated that lead contamination was, in fact, pervasive, or Defendant otherwise conceded that point, that is evidence the Court could not ignore. But merely citing the Recall Notice, without any other allegations or evidence to support widespread contamination, is insufficient to establish standing.

Accordingly, Plaintiff's Complaint is **DISMISSED** without prejudice.

**SO ORDERED.**

*s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[4] In Huertas, the recall notice indicated that benzene was found to be present in "some samples" of the products. 120 F.4th at 1178 n.15. That language, the Court observed in a footnote, made it "particularly true" that a recall, standing alone, is insufficient. Id. (emphasis added). But it is not apparent that the Court's ruling was contingent on that language, or that a recall notice with language less favorable to a defendant would render a voluntary recall notice dispositive evidence of widespread contamination.